UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| TIMMY NATHAN JOHNSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 1:11CV000110 RWS |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

MEMORANDUM AND ORDER

This matter is before me on Timmy Nathan Johnson's motion pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  In his § 2255 motion, Johnson alleges that the June 2008 search of his home was improper.  He further claims that the prosecutor in his case engaged in misconduct.  Finally, he claims that he was denied effective assistance of counsel.  Johnson requests that I reverse his conviction, vacate his sentence, and allow an evidentiary hearing on the matter.  Because all of Johnson's claims are without merit, his motion will be denied.

**I.     Background**

On March 4, 2009, a grand jury returned a superceding indictment charging Johnson with one count of conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, two counts of conducting a financial transaction which involved the proceeds from the sale of methamphetamine, in violation of 18 U.S.C. § 1956(a)(1)(A)(I), one count of possessing a firearm having been previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1), and one count of possessing a firearm while being an unlawful user of a controlled substance, in

violation of 18 U.S.C. § 922(g)(3).  On March 4, 2009, Johnson pleaded not guilty to the charges. Following a three-day jury trial in July of 2009, Johnson was found guilty on counts 1, 3, 4, and 5.  Count 5 was later dismissed.

The relevant facts are as follows:

On June 27, 2008, DEA agent Bernie Gard conducted a search of Johnson's home with Johnson's consent.  Johnson filed a motion to suppress certain evidence obtained by investigators.  In Magistrate Judge Lewis Blanton's Report and Recommendation, he recommended I deny the motion to suppress.  I adopted Judge Blanton's findings and recommendation on February 11, 2009.

Prior to trial, Johnson and his attorney met on numerous occasions to discuss matters relating to Johnson's defense.  Johnson maintained his innocence throughout the proceedings. Johnson refused to accept a plea agreement offered by the prosecution and the opportunity for a departure motion if he agreed to cooperate in other prosecutions.  In response to requests by Johnson, his attorney attempted to contact several witnesses who Johnson believed would be helpful to his defense.  Despite numerous attempts, counsel was unable to contact one witness, Jack Burgess.  The other witnesses, Melanie Spydal, Iris Russem, and Luke van Osdale, were interviewed.  For various reasons, Johnson and his attorney agreed that the potential testimony of all these persons would be either unhelpful or even harmful to Johnson's defense.

Throughout the trial, Gard sat at the prosecution's table.  During the trial, a rifle belonging to Johnson was introduced into evidence.  This rifle was kept in Gard's custody during the trial and all recesses.  Gard, a certified DEA Firearms Instructor with extensive firearm safety training, took all possible safety precautions while handling the weapon.

Johnson and his attorney agreed that the best strategy at trial would be to assert insufficiency of the evidence. Johnson discussed this decision with me and with his attorney. At trial, Johnson again confirmed his agreement with this strategy. His attorney presented no evidence and called no witnesses on Johnson's behalf. Johnson's attorney did cross examine the prosecution witnesses.

On direct appeal to the United States Court of Appeals for the Eighth Circuit, Johnson argued that I erred in denying his motion to suppress. The Eighth Circuit rejected Johnson's argument and affirmed his conviction and sentence. United States v. Johnson, 619 F.3d 910 (8th Cir. 2010). Johnson did not file a writ of certiorari to the United States Supreme Court. Johnson filed this motion pursuant to 28 U.S.C. § 2255.

## II. Discussion

Johnson's § 2255 motion raises the following grounds for relief:

(1) DEA agent Bernie Gard *illegally searched* Johnson's home in June 2008 because he lacked a warrant, and that evidence was improperly admitted in his trial;

(2) DEA agent Bernie Gard engaged in *prosecutorial misconduct* during Johnson's trial by inappropriately displaying and commenting on one of Johnson's rifles to jurors during a recess and by coaching witnesses during their testimony;

(3) Johnson received *ineffective assistance of counsel* because his attorney failed to fully investigate his case, failed to seek a plea offer, failed to interview and call defense witnesses at Johnson's request, failed to meaningfully cross-examine prosecution witnesses, and failed to object to Gard's prosecutorial misconduct.

### A. Johnson Cannot Claim that the Search of His Home was Improper

Johnson first alleges that the June 2008 search of his home was improper and that evidence taken during the search should have been suppressed. His main contention is that DEA agent Bernie Gard searched his home without a warrant.

However, Johnson cannot claim that the June 2008 search of his home was improper. He raised that issue before the magistrate judge, who recommended I deny the motion to suppress. I adopted that recommendation, and the United States Court of Appeals for the Eighth Circuit affirmed my denial of the motion. Johnson, 619 F.3d at 919. Johnson cannot raise an argument in his § 2255 motion that was raised and decided on direct appeal. U.S. v. Houser, 508 F.2d 509, 513 (8th Cir. 1974). As a result, Johnson's claim regarding the June 2008 search is without merit.

B.   **DEA Agent Bernie Gard Did Not Engage in Prosecutorial Misconduct**

Johnson next alleges that DEA agent Bernie Gard engaged in misconduct during Johnson's trial. DEA agent Gard sat at counsel table with Assistant U.S. Attorney Tim Willis throughout the trial. Johnson claims that Gard coached witnesses during trial by nodding or shaking his head at them during their examinations. Further, Johnson claims that Gard "brandish[ed]" one of Johnson's rifles to jurors during a court recess and that Gard talked about the weapon's "dangerousness."

Johnson's prosecutorial misconduct claims should have been, but were not raised on appeal. The failure to raise these claims on direct appeal should result in procedural default. If the claims were procedurally defaulted Johnson would need to justify the default by showing cause and prejudice. See Bousley v. United States, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'") (citations omitted). The United States Attorney, however, does not contend that the argument is procedurally defaulted. As a result, I will address

the claim on the merits.  United States v. Mooring, 287 F.3d 725, 727 (8th Cir. 2002) (finding that a court need not determine whether cause and prejudice excuse procedural default where government failed to assert default).  Johnson's claim is nevertheless without merit.

Prosecutorial misconduct involves serious unfairness which results in a deprivation of a defendant's fundamental due process right to a fair trial.  Greer v. Miller, 483 U.S. 756, 765 (1987).  To prove prosecutorial misconduct, Johnson must show that (1) the prosecutor's conduct was improper and (2) that conduct "prejudicially affected the defendant's substantial rights." Graves v. Ault, 614 F.3d 501, 507 (8th Cir. 2010).  If the conduct is determined to be improper, the court should analyze prejudice to the defendant by examining "the cumulative effect of the misconduct, the strength of the properly admitted evidence of the defendant's guilt, and any curative actions undertaken by the trial court."  United States v. Mullins, 446 F.3d 750, 757 (8th Cir. 2006).  Because Johnson cannot prove that Gard's allegedly improper conduct ever occurred, I need not determine whether such conduct prejudicially affected Johnson's rights.  See United States v. Hyles, 521 F.3d 946, 958 (8th Cir. 2008) (finding no prosecutorial misconduct after examining only the propriety prong).

First, Johnson claims that Gard "coached and prepped" other prosecution witnesses prior to trial and that he "direct[ed] witnesses on the stand during the trial with surreptitious nods of his head, instructing the witnesses on the stand as to how to answer questions directed at them." Johnson cites two affidavits that confirm this allegation, one from his father and one from his son.  However, there is simply no evidence that such conduct ever actually occurred.  First, I presided over the trial and observed no such misconduct.  In fact, no one brought any such "coaching" to my attention during the trial.  Had I been informed of any "coaching" or similar

misconduct, I would have dealt with it appropriately during the trial.  Gard states in his affidavit that all prosecution witnesses were clearly told to testify based only on their personal knowledge, and that their failure to testify truthfully could result in criminal charges against them.  He clearly states that he did not coach any witnesses, either in or out of court.  Furthermore, Johnson's own defense counsel submitted an affidavit claiming that he never observed Gard "engaging in any overt 'coaching' of witnesses," and that, if he had, he "certainly would have objected." Additionally, neither Johnson nor his girlfriend made any sworn statements about Gard's pre-trial or mid-trial coaching.  Neither Mr. Johnson, his family, nor his counsel brought any "coaching" to my attention.  As a result, Johnson's prosecutorial misconduct claim as to Gard's alleged "coaching" fails.

Second, Johnson claims that Gard "brandish[ed]" one of the rifles admitted into evidence to "dozens of people," including jurors, during a trial recess.  Johnson also alleges that Gard talked about how dangerous the weapon was in the hearing of the jurors.  As with the coaching allegations, Johnson relies on affidavits from his father and son.  As before, both the trial record and the prosecution's evidence refute the claim.

Gard, a certified DEA Firearms Instructor with extensive firearm safety training, averred that he had taken all possible safety precautions regarding the rifle in question.  As part of these precautions, he avoided pointing the rifle at anyone.  Gard further states in his affidavit that he makes a point of not discussing court proceedings, including items of evidence, in the hearing of the public.  Also, defense counsel averred that he had no recollection of seeing Gard "brandishing" the rifle in the court hallway.

Moreover, no juror came forward to alert me of any questionable conduct on Gard's part,

although they are expressly instructed to report to me any time someone attempts to speak to them about the case.  Even if jurors saw Gard with the rifle, this does not establish that they were in any way influenced by that fact.  Furthermore, although Johnson's father and son averred to Gard brandishing the rifle, neither stated that Gard made any comments about the rifle or its dangerousness.  As with the allegations of coaching, neither Johnson nor any of his family members brought the alleged brandishing incident to my attention or to the attention of defense counsel.  As a result, Johnson cannot establish prosecutorial misconduct and his claim fails.

      **C.**     **Johnson Did Not Receive Ineffective Assistance of Counsel**

In his next ground for relief, Johnson claims that his trial counsel was ineffective because he failed to investigate Johnson's defense, failed to seek a plea offer, failed to call witnesses on Johnson's behalf, failed to present evidence in his defense, and failed to object to Bernie Gard's prosecutorial misconduct.  He also alleges that his counsel failed to meaningfully cross-examine prosecution witnesses and did not even attempt to obtain a plea agreement.

To establish that his trial counsel was constitutionally defective under the Sixth Amendment, Johnson must show that (1) counsel's performance was deficient and (2) that the deficiency "prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984).  To prove deficiency, Johnson must meet the high burden of showing that his counsel made such serious errors such that he was "not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id.; see also United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (noting the "heavy burden" a movant faces under the Strickland standard).  Courts accord substantial deference to counsel's performance, examining his actions at the time they were taken, not after.  Strickland, 466 U.S. at 689.  Furthermore, though counsel "undoubtedly has a

duty to discuss potential strategies with the defendant," "when a defendant, informed by counsel, neither consents nor objects to the course counsel describes...counsel is not automatically barred from pursuing that course."  Florida v. Nixon, 543 U.S. 175, 178 (2004).  Instead, counsel's strategic decision is measured against the objective reasonableness standard enunciated in Strickland.  Id.  To show prejudice, Johnson must prove a "reasonable probability" that the outcome of the proceeding would have been different "but for counsel's unprofessional errors."  Id. at 694.  Where the movant fails to establish one of the two elements, the claim fails.  Engelen v. United States, 68 F.3d 238, 241 (8th Cir. 1995).

   1. *Counsel Adequately Discussed Plea Agreements Which Johnson Refused*

  In his affidavit, Johnson states that counsel "[a]t no time...attempt[ed] to obtain a plea agreement in order to avoid going to trial."  He notes that he asked his attorney about a plea agreement at the request of his father, but that he "only offered to take me to the United States Attorney's Office to tell Plaintiff everything I knew about the participants in the case instead of asking for a plea arrangement for a reduced sentence."  His father echoes these statements in his affidavit, stating that his son was never offered a plea agreement though it was discussed repeatedly.  He further avers that defense counsel "did not want such an agreement because he wanted to go to trial where he would make more money off my son."  Finally, he claims that counsel "never advised my son against going to trial."

  These statements are refuted by evidence showing explicit and repeated discussions between Johnson and his attorney concerning plea agreements.  First, defense counsel avers that Johnson consistently declined a plea agreement because he steadfastly maintained his innocence on the conspiracy charge.  Counsel kept detailed records of his meetings with Johnson, and a

letter dated November 19, 2008 shows that Johnson and his attorney discussed a possible guilty plea and that Johnson refused to plea "under any circumstances." The letter states that "[t]he prosecutor has made clear to us that he is willing to negotiate a plea agreement." However, in this letter defense counsel notes that the prosecutor hoped for cooperation from Johnson and information concerning other members of the conspiracy.

Nevertheless, later discussions show that a plea agreement was available even without cooperation. An email containing a formal offer was sent by the prosecution to defense counsel on February 5, 2009. The offer clearly stated that cooperation was not required, but would "allow the possibility of further reduction" from the plea terms already stated. This information was passed on to Johnson at a meeting on February 19, 2009. After further discussions, another letter dated May 6, 2009 shows that defense counsel informed Johnson that "[t]he prosecutor is still hoping you will plead guilty and/or cooperate will [sic] the overall investigation." The letter also reflects that Johnson continued to maintain his innocence. Defense counsel avers that he consistently pointed out to Johnson the weaknesses of his case and the great risk Johnson was taking by going to trial.

Whether or not Johnson believed he had useful information for the prosecution in order to secure a more favorable plea agreement, such agreements, including offers without cooperation, were discussed often and thoroughly up until the eve of trial. Johnson refused to admit guilt and accept a plea offer. Even at his sentencing hearing, Johnson claimed innocence. As a result, Johnson's claim that his attorney failed to seek or obtain plea agreement is without merit.

    2.    *Counsel Adequately Investigated Johnson's Defense and Possible Witnesses*

Johnson further claims that his counsel failed to adequately investigate Johnson's defense

and interview possible witnesses. Johnson claims that his attorney failed to contact certain witnesses at Johnson's request or call them at trial. Johnson apparently wanted these witnesses to testify that he was a "simple drug addict" and not the leader of a conspiracy. He claims that this conduct "constitutes a neglectful lack of diligence in preparation and investigation, and this cannot rationally be construed as a strategic choice."

Failure to call witnesses can constitute ineffective assistance of counsel "where the record establishes that counsel did not actually assess the credibility of the witness." Becker v. Luebbers, 578 F.3d 907, 920 (8th Cir. 2008). In determining whether failure to call witnesses created prejudice, courts examine: (1) the credibility of all witnesses, including the likely impeachment of the uncalled defense witnesses, (2) the interplay of the uncalled witnesses with the actual defense witnesses called, and (3) the strength of the evidence actually presented by the prosecution. McCauley-Bey v. Delo, 97 F.3d 1104, 1106 (8th Cir. 1996). In considering the third factor, "there is no prejudice if, factoring in the uncalled witnesses, the government's case remains overwhelming." Id. Analyzing these factors in relation to the facts of this case, I find that Johnson cannot establish prejudice.

As to the first factor, defense counsel determined that the witnesses Johnson sought to have called either lacked credibility or would provide unhelpful, perhaps even harmful, testimony. Johnson informed his attorney that he wanted to call Jack Burgess, Iris Russem, and Luke van Osdale. Johnson avers that not only were these witnesses not called at trial, defense counsel never contacted them at all.

Counsel interviewed Luke van Osdale, Johnson's neighbor. After the phone interview, counsel determined that van Osdale's testimony would be unhelpful because it was factually

inconsistent with Johnson's statements.  The interview was cut short because van Osdale's phone disconnected.  Counsel called back twice, and van Osdale never responded to any voicemail messages.  After discussing the matter, Johnson and his attorney agreed not to call van Osdale.

Defense counsel also interviewed Iris Russem.  She was Johnson's immediate work supervisor and would have testified that, though Johnson inexplicably stopped coming in to work and paying rent, she never saw him with any "shady characters."  Nevertheless, Johnson and his attorney agreed not to call Russem, because she expressed discomfort at the prospect of being called as a witness in this case and in fact became upset during her telephone interview with counsel.

Counsel unsuccessfully attempted to contact Jack Burgess on two occasions.  Counsel notes that Johnson himself admitted that it may have been difficult to obtain Burgess's assistance because Burgess had recently served prison time and was "worried about coming to court." Furthermore, counsel later learned that Burgess was an unindicted co-conspirator in Johnson's case, which may explain why Burgess would not return counsel's calls.

Defense counsel also interviewed Melanie Spydal, Johnson's girlfriend.[1]  During a call with Spydal, counsel noted that Spydal "had a manner of speaking that was very fast, almost frantic."  Counsel's overall impression after the interview was the Spydal was likely involved in the "methamphetamine lifestyle" herself and that she likely interacted with Johnson and his co-conspirators regarding their distribution operation.  Counsel made a strategic decision not to call Spydal in Johnson's defense because it would do more harm than good to present witnesses who

---

[1] Although Johnson's affidavit claimed that he only sought Burgess, Russem, and van Osdale as witnesses, counsel's interview with Spydal further evidences the adequacy of his investigation and preparation of Johnson's defense.

"were immersed in the methamphetamine lifestyle." Johnson agreed with this strategic move.

Regarding the second factor in examining prejudice, the primary defense strategy in Johnson's case was insufficiency of the evidence. Thus, despite the fact that counsel called no witnesses in Johnson's defense, this does not constitute lack of preparation. Instead, it falls within the range of strategic decisions by counsel to which the court defers. Strickland, 466 U.S. at 689 ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'").

The third factor likewise does not weigh in Johnson's favor. The weight of the prosecution's evidence shows that counsel's failure to call Johnson's desired witnesses would not have reasonably affected the outcome of the trial. As discussed above, counsel determined that the witnesses Johnson wished to call would in fact harm Johnson's defense, not help it. While they may have testified that they had no knowledge of Johnson's involvement in a conspiracy, they would likely have further incriminated him by testifying to the fact that he was "a simple drug addict who got in too deep." It is well within counsel's strategic discretion to abstain from calling witnesses that would harm the client's position. Toliver v. McCaughtry, 539 F.3d 766, 775 (7th Cir. 2008). Incorporating Johnson's witnesses in the trial would have harmed Johnson's defense. Given the inherent weakness of Johnson's potential witnesses and the strength of the prosecution's case, Johnson cannot establish that counsel's failure to call those witnesses prejudiced his defense.

Counsel either interviewed or adequately attempted to contact all of Johnson's desired witnesses. Johnson concurred with the ultimate strategic decision not to subpoena any of them. Johnson himself concedes in his motion that "there may have been little counsel could have done

by way of a defense to the charges."[2]  In fact, at trial Johnson was asked about the trial strategy.  I apprised him of his right to present witnesses on his behalf, and he once again stated his agreement with the strategy.  As a result, Johnson cannot establish deficiency or prejudice and his claim fails.

       3.      *Counsel Adequately Defended Johnson at Trial*

Johnson next alleges that his counsel failed to present any evidence at trial and failed to adequately cross-examination the prosecution's witnesses.  Johnson's father avers that counsel "did not appear to be prepared or interested in the trial" and that he "asked only desultory and few questions on cross examination."  Spydal states that counsel "never asked the government's witnesses more than a few cursory questions, eliciting from them no information of any apparent value."  Johnson's son also claims that counsel's performance at trial was deficient and prejudicial because he "failed to effectively cross examine witnesses" by "asking only simple and few questions."  Both Johnson and his son state that, specifically, counsel failed to question Myrna Contreras, an important prosecution witness, about a factual inconsistency in which she was stopped by Missouri police on the same day she was reportedly crossing the border into Mexico.  This, Johnson avers, would have undermined her credibility.

Johnson and his attorney agreed that their trial strategy would be insufficiency of the evidence.  Johnson reiterated his agreement with the strategy at trial:

      ATTORNEY: Mr. Johnson...you understand that we have a right to present witnesses on your behalf, and we have discussed it several times in the

---

[2] Johnson asserts that counsel was ineffective for failing to present "mitigation evidence."  However, it was his agreed-on trial strategy to present no evidence.  Furthermore, he maintained his innocence even at sentencing, where mitigation evidence would have been helpful.

      days and months leading us – you along with us – and decided it would be in your best interest not to put on any witnesses; is that correct?

      JOHNSON: Yeah, that's correct.

Under this strategy, counsel acted reasonably in refusing to put on evidence in Johnson's defense. Thus Johnson cannot claim that counsel's performance was deficient in failing to present evidence at trial.

    Johnson also cannot establish that his attorney failed to adequately cross-examine prosecution witnesses. First, counsel avers that he and Johnson discussed Myrna Contreras's conflicting stories and decided it would not benefit Johnson to pursue the matter. Moreover, counsel vigorously questioned Contreras on cross-examination about her cooperation deal with the prosecution and her desire for sentence reduction, which undermined her credibility. Counsel's cross-examination is adequate where he impeaches prosecution witnesses. See Hall v. Luebbers, 296 F.3d 685, 693-96 (8th Cir. 2002) (rejecting claims of ineffective assistance where counsel totally failed to impeach prosecution witnesses).

    This is the only specific factual claim Johnson makes. Although Johnson's father and son complain vaguely about counsel's cross-examinations throughout the trial, they fail to state with any specificity which witnesses were inadequately examined and on which subjects. Without factual specificity, Johnson cannot support a claim of ineffective assistance of counsel. United States v. Johnson, 582 F.2d 1186, 1188 (8th Cir. 1978) ("[Counsel's failures] must...be supported by specific allegations.").

    In any event, the record conclusively establishes that counsel adequately cross-examined other witnesses. Counsel impeached witness Ken Grady by showing that he testified in order to

secure a sentence reduction, was a habitual drug user, and had sold drugs in the past.  Counsel obtained similar impeaching admissions from government witnesses Jimmy George, Shawn Montgomery, and Victor Thomason.  He further showed that George and Thomason were previously convicted felons.  Counsel also impeached George and Montgomery by showing that they had lied to police initially during the investigation.  This impeaching testimony shows that counsel met the objective standard of reasonableness in cross-examination.  See Hall, 296 F.3d at 693-96.

Johnson cannot show that his counsel failed to adequately cross-examine government witnesses.  He likewise cannot show that counsel's failure to present evidence was not the result of clear agreement on trial strategy between counsel and Johnson.  As a result, Johnson's claim fails.

        4.        *Counsel Did Not Fail to Object to Prosecutorial Misconduct*

Johnson's final claim is that counsel failed to object to Agent Gard's "obvious prosecutorial misconduct."  Because there was no prosecutorial misconduct for the reasons stated above, this claim fails.

        **C.**        **An Evidentiary Hearing is Not Warranted**

Johnson requests an evidentiary hearing on this motion.  However, where "the motion, files, and records of the case conclusively show that [the movant] is entitled to no relief," an evidentiary hearing is not required.  Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks and citation omitted).  Where the record refutes each claim, the movant is not entitled to an evidentiary hearing.  Watson v. United States, 493 F.3d 960, 963 (8th Cir. 2007).  Here, I find that the record refutes each of Johnson's claims.  As a result, Johnson is

not entitled to an evidentiary hearing.

### III.     Certificate of Appealability

In order to grant a certificate of appealability, a court must find a substantial showing of a denial of a constitutional right.  See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1977).  A substantial showing "is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." Id.  Because Johnson has made no such showing, I will not issue a certificate of appealability.

Accordingly,

**IT IS HEREBY ORDERED** that Timmy Johnson's Motion to Vacate, Set Aside or Correct his sentence pursuant to 28 U.S.C. § 2255 [#1] is DENIED.

**IT IS FURTHER ORDERED** that, since Johnson has not made a substantial showing of a denial of a constitutional right, this Court will not issue a certificate of appealability.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 19th day of April, 2012.